## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER VAUGHN, on behalf of herself and all others similarly situated, | Civil Action No.: |
| Plaintiff, | |
| v. | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| PITTSBURGH FONDUE, LLC; SOUTHEAST FONDUE, LLC; COLORADO FONDUE, LLC; KANSAS CITY FONDUE, LLC; ROCHESTER FONDUE, LLC; BUFFALO FONDUE, INC.; JAMES MATERESE; MICHAEL CHRISTOPHER MILLSAP; and DOE DEFENDANTS 1-10. | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Jennifer Vaughn ("Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

### INTRODUCTION

1.      This is a class and collective action brought on behalf of "Tipped Employees" who work or have worked at restaurants operating under the trade name The Melting Pot Fondue Restaurant ("Melting Pot") that are owned, operated and/or otherwise managed or controlled by Defendants Pittsburgh Fondue, LLC ("Pittsburgh LLC"), Southeast Fondue, LLC ("Southeast LLC"), Colorado Fondue, LLC ("Colorado LLC"), Kansas City Fondue, LLC ("KC LLC"), Rochester Fondue, LLC ("Rochester LLC"), Buffalo Fondue, Inc. ("Buffalo Inc." and together with Pittsburgh LLC, Southeast LLC, Colorado LLC, KC LLC and Rochester LLC, the "Corporate Defendants"), James Materese and Michael Christopher Millsap (collectively, "Defendants") and have been subject to the unlawful practices detailed herein.

2.     Upon information and belief, Defendants own and/or otherwise control at least six (6) entities operating as Melting Pot restaurants (the "Restaurants").[1]

3.     The Melting Pot Restaurants function as a single integrated enterprise – a casual dining fondue restaurant.

4.     The Melting Pot Restaurants are franchisees of the franchise brand Melting Pot, which is owned by Front Burner Brands.

5.     As detailed below, upon information and belief, each of the Melting Pot Restaurants operated by Defendants maintain common ownership and share the same employment policies, including those relating to the compensation of Tipped Employees

6.     Upon information and belief, the employment practices complained of herein were applicable to all Tipped Employees employed at the Melting Pot Restaurants, as Defendants utilized common labor policies and practices at each of their Melting Pot locations. Accordingly, Defendants are responsible for the employment practices complained of herein.

7.     Defendants employ individuals in a tipped capacity, namely "servers" ("waiters and "waitresses"), bartenders and "busser/server assistants" (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.  As Tipped Employees, these individuals were primarily responsible operating the "front of the house" and interacting with customers, including taking customers' orders, serving them their food/drink, and removing the used plates/glasses after the customers was done eating/drinking.

8.     As explained in detail below, Defendants systematically and willfully deprived Plaintiff and other Tipped Employees of minimum wages in violation of the Fair Labor

---

[1] Should discovery reveal additional Melting Pot Restaurants controlled by Defendants, or additional officers exercising control over the labor policies complained of herein, Plaintiff reserves the right to seek leave to amend this Complaint.

Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.,* by, among other things, failing to satisfy the notice requirements of the tip credit provisions of the FLSA and PMWA.

9.      Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit," as well as its other violations of the tip credit provisions set forth herein, Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees.  The result of Defendants' conduct is that Tipped Employees were paid less than the mandated minimum wage.

10.      Defendants further violated the FLSA, PMWA and Pennsylvania common law by requiring its Tipped Employees to participate in an illegal tip pool whereby they were required to tip out to individuals who did not customarily receive tips such as "silverware rollers" and "food expeditors."  These individuals do not qualify as employees who customarily and regularly receive tips because they are not "front of the house employees," nor do they have contact with Defendants' customers.

11.      Furthermore, Defendants violated the FLSA, PMWA and Pennsylvania common law by requiring its Tipped Employees to forfeit portions of their tips to reimburse Defendants for the cost of meals where a customer left the Restaurant without paying for the bill ("dine and dash").

12.      In addition, Defendants violated the PMWA when they required Plaintiff and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as after the restaurant had closed or when a Tipped Employee was "cut" for the day (*e.g.*, they were no longer responsible for serving customers and instead

had to perform solely cleaning/stocking work). This is in contravention of applicable Pennsylvania state law.

13.     Further, Defendants required Plaintiff and current and former Tipped Employees to perform numerous non-tipped duties that are unrelated to their tipped occupation. This includes, but is not limited to: (i) detailing their assigned tables (including cleaning both the table and the chairs); (ii) cleaning and removing the residue from the burners on the tables; (iii) checking and refilling the table caddies; (iv) rolling silverware; and (v) cleaning their assigned portion of the kitchen. Notably, much of this work was performed after the restaurant closed, necessarily meaning that Plaintiff and other Tipped Employees could not receive tips during this time.

14.     Despite spending significant time performing this unrelated non-tipped work, Defendants paid Plaintiff and current and former Tipped Employees a sub-minimum wage for performing this work

15.     In addition, Defendants required Plaintiff and other current and former Tipped Employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek.

16.     Lastly, Defendants required Tipped Employees to attend mandatory meetings for which the Tipped Employees were not clocked-in to Defendant's time-keeping system, and were not compensated for the time attending the mandatory meetings.

17.     As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

## SUMMARY OF CLAIMS

18.     Plaintiff brings this action as a collective action to recover unpaid wages, pursuant

to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the

"Act").

19.     Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for
> Defendants in the United States within the statutory period covered by this
> Complaint and elect to opt-in to this action pursuant to the FLSA, 29
> U.S.C. § 216(b) (the "Collective Class").

20.     Plaintiff also brings this action as a state-wide class action to recover unpaid

wages pursuant to the PMWA and Pennsylvania common law.

21.     Specifically, Plaintiff brings this suit on behalf of a class of similarly situated

persons composed of:

> All current and former Tipped Employees who have worked for
> Defendants in the Commonwealth of Pennsylvania during the statutory
> period covered by this Complaint (the "PA Class").

22.     The Collective Class and the PA Class are hereafter collectively referred to as the

"Classes."

23.     Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to

unpaid minimum wages from Defendants for hours worked for which Defendants failed to

comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as

required by law and for Defendants' unlawful tip pool; and (ii) entitled to liquidated damages

pursuant to the FLSA, 29 U.S.C. § 201 *et seq*.

24.     In addition, Plaintiff also alleges on behalf of the Collective Class that they are:

(i) entitled to unpaid minimum wages from Defendants for hours worked for which they

performed unrelated, non-tip-generating work for which Defendants failed to pay the full,

mandatory minimum wage, as required by law and (ii) required them to perform non-tipped work despite being paid only the tipped wage.  In addition, Plaintiff alleges on behalf of the Collective Class that they are entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

25.     Plaintiff alleges on behalf of the PA Class that Defendants violated the PMWA by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked.  Defendants also violated PMWA by failing to pay PA Class members the full minimum wage for time spent performing non-tip generating work.

26.     In addition, Defendants violated the PMWA and Pennsylvania common law for utilizing an illegal tip pool, whereby Plaintiff and Tipped Employees were required to forfeit some of their tips to non-tipped employees.

**PARTIES**

27.     Plaintiff Jennifer Vaughn ("Plaintiff" or "Vaughn") is a resident of the Commonwealth of Pennsylvania, who was employed by Defendants as a "server" at their Station Square restaurant.  While employed as a Tipped Employee, Defendants failed to compensate Plaintiff properly for all hours worked.

28.     Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action.  Her Consent To Sue form is attached hereto as Exhibit A.

29.     Defendant Pittsburgh LLC, is a Delaware corporation with a principal address located at 138 Promenade Lane, Williamsville, New York 14221, and is a franchisee of The Melting Pot Restaurants, Inc.  Pittsburgh LLC operates a Melting Pot Restaurant located at 242 W. Station Square Dr. Pittsburgh, Pennsylvania 15219.

30.     Defendant Southeast LLC is a limited liability company registered in Ohio, and is a franchisee of The Melting Pot Restaurants, Inc.  Defendant Southeast LLC operates a Melting Pot Restaurant at 11023 Montgomery Road, Symmes, OH 45249.

31.     Defendant Colorado LLC is a limited liability company registered in Colorado with its principal address located at 138 Promenade Lane, Williamsville, New York 14221, and is a franchisee of The Melting Pot Restaurants, Inc.  Defendant Colorado LLC operates a Melting Pot Restaurant at 30 E Pikes Peak Ave, Ste A Colorado Springs, Colorado 80903.

32.     Defendant KC LLC is a limited liability company registered in Missouri and is a franchisee of The Melting Pot Restaurants, Inc.  Defendant KC LLC operates a Melting Pot Restaurant at 450 Ward Parkway, Kansas City, Missouri 64112.

33.     Defendant Rochester LLC is a limited liability company registered in New York with its principal address located at 138 Promenade Lane, Williamsville, New York 14221, and is a franchisee of The Melting Pot Restaurants, Inc.  Defendant Rochester Fondue LLC operates a Melting Pot Restaurant at 290 Miracle Mile Dr. Rochester, New York 14623.

34.     Defendant Buffalo LLC is a limited liability company registered in New York with its principal address located at 138 Promenade Lane, Williamsville, New York 14221, and is a franchisee of The Melting Pot Restaurants, Inc.  Defendant Rochester Fondue LLC operates a Melting Pot Restaurant at 1 Walden Galleria, Ste D224, Galleria Mall, Buffalo, New York 14225.

35.     Defendant James A. Materese ("Materese") is a resident of the State of New York, and is listed as an officer of Defendant Pittsburgh LLC its liquor license registration with the Pennsylvania Liquor Control Board.  In addition, Defendant Materese is as listed the original member forming Colorado LLC with the Colorado Secretary of State, and as an "Owner" on KC

LLC's registration with the Missouri Secretary of State.  Upon information and belief, Materese is an officer of each of the Corporate Defendants.  In addition, Materese's home address is used as the listed principal office of Defendants Pittsburgh LLC, Colorado LLC, Rochester LLC and Buffalo LLC.  In his capacity as an officer of the Corporate Defendants operating Melting Pot Restaurants, Materese is responsible for the labor policies and practices of Defendants' Melting Pot Restaurants complained of herein, and is the employer of Plaintiff and the Classes for purposes of the FLSA and PMWA.

36.    Defendant Michael Christopher Millsap ("Millsap") is a resident of the Commonwealth of Pennsylvania.  Defendant Millsap is listed as an officer of Defendants Pittsburgh LLC, Southeast LLC, Colorado LLC and KC LLC.  Indeed, Defendant Millsap is listed as an officer of Defendant Pittsburgh LLC on its liquor license registration with the Pennsylvania Liquor Control Board, and is listed as an officer of Southeast LLC with the Ohio Department of State.  In his capacity as an officer of the Corporate Defendants, Defendant Millsap is responsible for the labor policies and practices of Defendants' Melting Pot Restaurants complained of herein, and is the employer of Plaintiff and the Classes for purposes of the FLSA and PMWA.

37.    At all relevant times during the statutory period covered by this Complaint, Defendants, through their actions as an integrated enterprise, have transacted business within the Commonwealth of Pennsylvania, including within this district.

38.    At all relevant times during the statutory period covered by this Complaint, Defendants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA.  Defendants uniformly operated the Restaurants under common control for a common business purpose.

39.     Defendants are engaged in related activities, *e.g.*, activities which are necessary to the operation and maintenance of the Melting Pot Restaurants.

40.     Defendants are a single integrated enterprise with a high degree of interrelated and unified operations, sharing common officers and a common corporate address.   Each of Defendants' Melting Pot Restaurants share the common labor policies and practices complained of herein.

41.     Upon information and belief, the sole reason for separate corporate entities was to limit the liability of Defendants.   Evidencing the interrelation and unified operation of the Melting Pot Restaurants, many of the entities maintain the same corporate address, which is the residential address of one of the Defendants – Defendant Materese.

42.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff.   Plaintiff believes there are additional entities employing Tipped Employees that have not yet been identified.   Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendants.   In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

43.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

44.     Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

45.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants, as an integrated enterprise, are subject to personal jurisdiction in this district.

46.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

47.     The crux of the FLSA and the PMWA is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

48.     Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

49.     Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendants.

50.     Upon information and belief, each of the Melting Pot Restaurants are/were operated under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

51.     Defendants govern and administer each Melting Pot Restaurant in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the Melting Pot Restaurant that a particular customer visits.

52.     As such, upon information and belief, the employment practices complained of herein occurred at all of Defendants' Melting Pot Restaurants, as Defendants utilized common labor policies and practices at each of their Restaurants.   Accordingly, Defendants are responsible for the employment practices complained of herein.

**Plaintiff's Experience Working For Defendant**

53.     As set forth above, Plaintiff was employed by Defendants as a "server" in their Station Square restaurant location in the Commonwealth of Pennsylvania. Plaintiff worked at this location from in or about September 2017 to February 2018, and then again from July 2018 to April 2019.

54.     Plaintiff was paid an hourly cash wage rate from Defendants and earned tips from customers who chose to leave a gratuity.

55.     When working as a server, Plaintiff was required to "tip out" to the following categories of workers: $5.00 to the silverware roller; $5.00 to the expo worker; and $5.00 to the "drink runner" for the shift.

56.     In addition, and regardless of the amount of tips she actually received, Plaintiff was required to pay 4% of her gross sales into a tip pool.

57.     Plaintiff's hourly wage rate from Defendants was $2.83 an hour. Plaintiff does not ever recall the hourly wage being raised by Defendants above $2.83 for any day worked, irrespective of the amount of tips earned or the type of work performed.

58.     Due to the restaurant being overstaffed, Plaintiff recalls several instances where she only earned about $25 in tips for a shift.  After Defendants' mandatory tip outs, she would leave with less than $20 in tips, and Defendants did not alter her hourly wage.

59.     Plaintiff typically worked for Defendants at the Station Square restaurant four shifts per week.  Her usual schedule included working Friday, Saturday, Sunday and Tuesday.

60.     For her Friday and Saturday shifts, Plaintiff typically began working between 4:00 and 5:00 p.m. and typically left anywhere between 10:30 p.m. and 1:00 a.m. When working Sundays, Plaintiff began working between 3:00 p.m. and 5:00 p.m. and typically left

between 9:30 p.m. and 11:30 p.m.  When working her Tuesday shift, Plaintiff typically began working between 4:00 p.m. and 5:00 p.m. and typically stopped working between 10:30 p.m. and 1:00 a.m.

61.     How late Plaintiff left depended on two primary factors.  The first factor was when she got "cut" (*e.g.,* ceased being assigned/responsible for dining patrons) and the next factor was how late her customers dined (as the restaurant would seat customers right up to the closing time.

62.     In total, she typically worked between thirty (30) and thirty-seven (37) hours per work.  Although, Plaintiff would occasionally work an additional shift, or switch a shift with another server, Defendants had a policy of not permitting its Tipped Employees to work over forty hours in a week.  Indeed, Plaintiff recalls being advised that Defendants do not approve shifts that would put an employee into an overtime situation.[2]

63.     Plaintiff recorded her work time by logging into Defendants' timekeeping system through the point-of-sale ("POS") system.

64.     Defendants typically required Plaintiff and other Tipped Employees to arrive an hour before the restaurant opened to the general public.  During this time, Plaintiff and her colleagues performed non-tip generating work and generally helped prepare the restaurant for the opening crowd.

65.      Defendants required Plaintiff and other Tipped Employees to stay after their last customer had left and/or the restaurant closed for the day so that they could perform certain tasks in order to ensure the restaurant was cleaned and prepared for the following day's business.  These tasks included, among other things: cleaning in the back of the house kitchen area,

---

[2] Plaintiff believes this policy was waived in certain, limited circumstances (*e.g.,* when the restaurant was short-staffed due to several Tipped Employees leaving Defendants' employ).

(including sweeping the floor); polishing wine classes; cleaning the tables and chairs, and final kitchen touch up work.

66.     Plaintiff estimates that there were usually one and one-half hours of closing work before an employee could leave the restaurant after being cut (*e.g.*, ceased receiving assigned tables to wait on).

67.     Because of these significant cleaning/breakdown work, as well as the significant amount of side work Defendants required Plaintiff and other Tipped Employees to perform, Plaintiff estimates that she and other Tipped Employees spent well in excess of 20% of their time performing non-tip generating work.

68.     Notably, Plaintiff was never instructed to clock in under a different job code when performing non-tip generating work or when working after the restaurant closed.  Indeed, to the best of Plaintiff's knowledge, Defendants did not keep track of such time separately from Plaintiff's entries into the POS system.

69.     The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

70.     In addition to performing extensive side work, Plaintiff and the other Tipped Employees were required to pay out of their tips to certain employees who did not customarily receive tips.

71.     Plaintiff and the other Tipped Employees were required to tip out at least $5 to designated food expediters who remained in the kitchen and did not interact with customers and also to designated silverware rollers.

72.     The silverware rollers also did not interact with customers, and were not even on the payroll of Defendants.  Their compensation was solely from the tips they received from

Tipped Employees. Thus Tipped Employees unjustly enriched Defendants through Defendants' policy of deducting from the tips of Plaintiff and the other Tipped Employees to offset their ordinary business expenses.

73.     Defendants also maintained a policy whereby Tipped Employees were required to reimburse Defendants for the costs of meals for diners who left the restaurant without paying for their meals ("dine and dash") to avoid being disciplined.  This money necessarily came from the tips of those employees.

74.     Lastly, Plaintiff and the other Tipped Employees were required to attend mandatory meetings for which they were not allowed to clock-in, and were thus not compensated for the time spend attending the mandatory meetings.

**The Tip Credit Provision & Requirements**

***FLSA Requirements***

75.     Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

76.     Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.[3]

---

[3] An employer is not relieved of their duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage.  That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit.  Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

77.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

78.     As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

79.     First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

80.     Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit.  In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

81.     Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee.  In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

82.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

83.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

84.     In short, Fact Sheet #15 effectively sets forth in plain English what is required under the regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

85.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[4]  If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

86.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference.  Stated another way, if a Tipped Employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour and the minimum wage is $7.25), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

87.     As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

88.     Further, an employer is *not* permitted to take a tip credit against its minimum wage obligations when (i) it requires its tipped employees to perform non-tipped work that is unrelated to the employees' tipped occupation (*i.e.,* "dual jobs") or (ii) it requires its tipped employees to perform non-tipped work that, although related to the tipped employee's occupation, exceeds 20% of the employee's time worked during a workweek.

89.     As set forth herein, Defendants violated these provisions by requiring Tipped Employees to perform work that was *unrelated* to their tipped occupation (*e.g.,* by cleaning the restaurant) and only paying them the sub-minimum tip-credit wages.

---

[4] Courts have strictly construed this notification requirement.  Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

90.     In addition, Defendants also violated these provisions by requiring Tipped Employees to perform non-tipped work that, *assuming arguendo* was related to their tipped occupation, exceeded 20% of their time worked in one or more individual workweeks during the period at issue.

91.     Defendants further violated these provisions by not allowing Tipped Employees to retain all their tips by requiring them to unjustly enrich Defendants by requiring them to: (i) pay or supplement the wages of non-tipped employees and (ii) requiring them to reimburse Defendants for the cost of dine and dash meals to avoid discipline.

***Pennsylvania's Requirements***

92.     Pennsylvania state law has a substantially similar requirement to the FLSA's tip notification requirements.  *See* 43 P.S. § 333.103(d).

93.     Importantly, however, Pennsylvania mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour.  Thus, under Pennsylvania law, the maximum tip credit is $4.42 per hour.[5]

94.     As such, an employer cannot be said to have complied with Pennsylvania's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters, as said posters do not explicitly identify the tip credit amount in Pennsylvania (as it differs from the FLSA tip credit amount).

95.     In addition, 34 Pa. Code § 231.34 also requires employers to maintain payroll records that contain the following information:

        (1)   A symbol or letter placed on the pay records identifying each employee whose wage is determined in part by tips;

---

[5] Like the FLSA, Pennsylvania law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee.  *See* 43 P.S. § 333.103(d).

(2)  Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours; and

(3)  Hours worked each workday in occupations in which the employee received tips and total daily or weekly straight-time earnings for the hours.

**Defendants' Failure To Comply With Applicable Wage Laws**

96.    As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

97.    Rather than comply with the notification requirements set forth in the regulations and made plain in Fact Sheet #15, Defendants chose to simply pay their Tipped Employees $2.83 per hour.  In short, Defendants failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

98.    The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, the employer forfeits the tip credit and must pay the employee the full minimum wage.

99.    Indeed, Plaintiff does not ever recall being notified by Defendants that it intended to take a "tip credit," nor how much that amount would be.  Evincing the magnitude of Defendants' abject failure to notify Tipped Employees of their intention to take a tip credit, until recently, Plaintiff never even heard the term "tip credit."

100.    As set forth above, these acts constitute violations of the tip credit requirements and applicable wage and hour laws.

101.    Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing of the hours worked where the Tipped Employee did not receive tips. Rather, Defendants took the maximum tip credit permissible for every hour worked by its Tipped Employees, including Plaintiff, irrespective of whether its Tipped Employees (i) actually earned sufficient tips to substantiate the tip credit claimed or (ii) whether the employees were engaged in tip generating work.

102.    Indeed, Defendants violated applicable Pennsylvania wage laws by requiring Tipped Employees, including Plaintiff, to be paid a sub-minimum wage for work performed when the Tipped Employee had no opportunity to generate tips, such as after the restaurant was closed to the public.  At no time did Defendants have Plaintiff or other Tipped Employees clock in under a different code or pay these individuals the full minimum wage, instead electing to continue to pay them the minimum cash wage and continuing to claim the tip credit despite the fact that these employees could not earn tips during this time.

103.    Such conduct constitutes a violation of 43 P.S. 231.34 insofar as Defendants failed to record the hours where Plaintiff and the other Tipped Employee were engaged in non-tip generating work.

104.    Indeed, Defendants regularly and frequently required Plaintiff and other Tipped Employees to perform a number of non-tipped duties *unrelated* to their tipped occupations, including *inter alia*: dusting tables; pulling out and moving booths; cleaning and wiping down the booths; sweeping and mopping the floors; cleaning the restaurant; breaking down and cleaning the server line; ensuring the general cleanliness of the front of the house; and rolling silverware.

105.    Further, Defendants regularly and frequently required Plaintiff and other Tipped Employees to perform a number of non-tipped duties *related* to their tipped occupations, including *inter alia*: preparatory and workplace maintenance; stocking and setting tables; cleaning booths; stocking stations throughout the restaurant; stocking the "kids' fridge" with milk, chocolate milk, and apple juice; filling salt & pepper shakers; filling dressing containers; filling sauce containers; bussing tables; brewing coffee; and rolling silverware.

106.    Despite the applicable law, Defendants paid Plaintiff and other Tipped Employees at an hourly rate less than the full minimum wage for all hours worked, including during periods of time which Plaintiff and members of the Classes were performing non-tipped work.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

107.    Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).  Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under the PMWA and Pennsylvania common law.

108.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to the PMWA and common law may be pursued by all similarly-situated persons who do not opt-out of the PA Class pursuant to Fed. R. Civ. P. 23.

109.    Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, given that Defendants operate multiple restaurants, there are likely well over 100 individuals in the Collective Class, and over thirty individuals in the PA Class.

110.    Defendants have acted, or have refused to act, on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

111.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent.  Plaintiff and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

112.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether Defendants have failed to pay the full minimum wage for each hour worked;

(b)    whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)    whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and

(d)    whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

113.    Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes.  Plaintiff has no interests adverse to the Classes she seeks to represent and has retained competent and experienced counsel.

114.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and

burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

115.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

116.    Defendants have violated and, continue to violate, the FLSA and PMWA. Moreover, the foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of the PMWA.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

117.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

118.    At all relevant times, Defendants have had gross revenues in excess of $500,000.

119.    At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

120.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

121.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

122.    Pursuant to Defendants' compensation policies, Tipped Employees were not paid for time spent attending mandatory meetings.

123.    Pursuant to Defendant's compensation policies, Tipped Employees were not paid full minimum wages for time spent performing non-tipped related work.

124.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

125.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
(On Behalf of the Collective Class)

126.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

127.    At all relevant times, Defendants has had gross revenues in excess of $500,000.

128.    At all relevant times, Defendants have been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

129.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

130.    Defendants failed and/or refused to comply with the FLSA, 29 U.S.C. § 201, et seq., 29 C.F.R. § 531.56(e), and the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f) by requiring Plaintiff and the Collective Members in a given workweek, and during each and every workweek Plaintiff and the Collective Members were employed by

Defendants, to perform non-tipped labor unrelated to their tipped occupation over the course of their regular workweek, while paying Plaintiff and the Collective Members at the tip credit rate.

131.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

132.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255

**THIRD CLAIM FOR RELIEF**
**PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS**
**(On Behalf of the PA Class)**

133.    Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

134.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

135.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the required minimum wage in Pennsylvania, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

136.    As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

137.    Pursuant to Defendants' compensation policies, Tipped Employees were not paid for time spent attending mandatory meetings.

138.     Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

139.     Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**PENNSYLVANIA COMMON LAW – UNJUST ENRICHMENT**
**(On Behalf of the PA Class)**

140.     Plaintiff, on behalf of herself and the PA Class Members, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

141.     Plaintiff and the members of the PA Class are/were employed by Defendants as Tipped Employees.

142.     At all relevant times, Defendants had a willful policy and practice of denying Tipped Employees their full share of gratuities.

143.     During the class period covered by this Complaint, Plaintiff and Tipped Employees were subjected to unlawful deductions from their gratuities.

144.     During the class period covered by this Complaint, Plaintiff and Tipped Employees were required to forfeit portions of their gratuities to offset certain of Defendants' ordinary business expenses, such as paying non-tipped employees and paying for dine and dash meals.

145.     Defendants retained the benefits of its unlawful deductions from the gratuities from Plaintiff and Tipped Employees under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

146.     Defendants were unjustly enriched by subjecting Plaintiff and Tipped Employees to such unlawful deductions.

147.     As direct and proximate result of Defendants' unjust enrichment, Plaintiff and the members of the PA Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the PA Class.

148.     Plaintiff, on behalf of herself and the members of the PA Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Collective Class and members of the PA Class respectfully requests the Court grant the following relief:

A.     Designation of this action as a collective action on behalf of the Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.     Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class;

C.     Designation of Plaintiff as representative of the Collective Class and the PA Class;

D.     Designation of Plaintiff's counsel as class counsel for the Collective Class and the PA Class;

E.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and PMWA;

F.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.   An award of unpaid minimum wages to Plaintiff and the members of the Classes;

H.   An award of liquidated damages to Plaintiff and members of the Classes;

I.   An award of interest to Plaintiff and the members of the PA Class;

J.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

K.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the complaint.

Dated:  August 30, 2019

Respectfully submitted,

**CARLSON LYNCH LLP**

By: /s/ Gary F. Lynch
      Gary F. Lynch
Gary F. Lynch (PA ID # 56887)
Edward W. Ciolko
Matthew D. Brady
1133 Penn Ave, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
Email: glynch@carlsonlynch.com
      eciolko@carlsonlynch.com
      mbrady@carlsonlynch.com

**CONNOLLY WELLS & GRAY, LLP**

Robert J. Gray
2200 Renaissance Blvd., Suite 275
King of Prussia, PA 19406
Telephone: 610-822-3700
Facsimile: 610-822-3800
Email: rgray@cwglaw.com
      gwells@cwglaw.com

***Attorneys for the Plaintiff and the
Proposed Classes***